STATE of Tennessee

v.

**Robert M. McKNIGHT.**

Supreme Court of Tennessee, at Jackson.

July 19, 2001.

---

C. Mark Donahoe, Jackson, TN, for the appellant, Robert M. McKnight.

Paul G. Summers, Attorney General & Reporter, Michael E. Moore, Solicitor General, Patricia C. Kussmann, Assistant Attorney General, James G. Woodall, District Attorney General, and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., FRANK F. DROWOTA, III, JANICE M. HOLDER and WILLIAM M. BARKER, JJ., joined.

Robert M. McKnight pleaded guilty to two charges of driving under the influence of an intoxicant (DUI) and was sentenced to consecutive terms of 11 months 29 days. The sentence provided that McKnight serve 210 days in jail; the time remaining would be probated. Upon reporting to serve his sentence, however, McKnight was informed that space was not available due to overcrowding and that he would be notified when to return. Over a year later, McKnight was notified to report to begin serving his sentence. Instead of reporting, McKnight filed a Motion for Post–Conviction Relief and/or Writ of Habeas Corpus. Relying upon this Court's holding in *State v. Walker*, 905 S.W.2d 554 (Tenn.1995), he contended that the sentences had expired. He asserted also that the State had violated his right to due process because of the excessive delay between sentencing and incarceration. After review of relevant authority, we hold that under Tenn.Code Ann. § 55–10–403(p)(3) (1998), delay in the service of DUI sentences does not affect the validity of the sentence. Therefore, McKnight's sentences are not expired. We further hold that the facts of this case do not demonstrate that McKnight's right to due process has been violated. Accordingly, the judgment of the Court of Criminal Appeals is affirmed.

### I. Facts and Procedural History

The facts of this case have been stipulated by the parties. On May 7, 1997, Robert M. McKnight, the defendant, pleaded guilty to a number of charges, including second- and third-offense driving under the influence of an intoxicant in violation of Tenn.Code Ann. § 55–10–401 (1998).[1] The trial court sentenced McKnight to consecutive sentences of 11 months 29 days in jail on the DUI charges and suspended them except for 60 days on the second-offense DUI and 150 days on

---

1. Tenn.Code Ann. § 55–10–401 (1998) provides *in pertinent part:*

 (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:

 (1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or

 (2) The alcohol concentration in such person's blood or breath is ten-hundredths of one percent (.10%) or more.

the third-offense DUI, leaving a total of 210 days to serve in jail. McKnight immediately reported to the Madison County Sheriff's Department to begin serving his sentences; upon arrival, however, he was told by a sheriff's deputy that space was not available for him due to overcrowding. McKnight was turned away at that time, and the deputy instructed him that he would be contacted at a later date. Not until over a year later, however, in August 1998, did the deputy order him to report to serve the sentence.

McKnight filed a Motion for Post–Conviction Relief and/or Writ of Habeas Corpus. He asserted that under this Court's holding in *State v. Walker*,[2] his sentence had expired. The trial court, after a hearing, ruled that McKnight's sentences had not expired; however, the court stayed execution of the sentence pending appeal. The Court of Criminal Appeals affirmed the judgment of the trial court, holding pursuant to Tenn.Code Ann. § 55–10–403(p)(3) (1998) that delay in the incarceration of DUI offenders has no effect on the validity of the sentence.[3] This Court granted review, and for the reasons discussed below, we now affirm the judgment of the Court of Criminal Appeals.

## II. Standard of Review

■ The resolution of the issues before this Court hinges upon the interpretation of Tenn.Code Ann. § 55–10–403(p)(3) (1998). The construction and interpretation of a statute is a question of law. *The Beare Co. v. Tennessee Dept. of Revenue,*

858 S.W.2d 906, 907 (Tenn.1993). The review of a question of law is de novo, with no presumption of correctness afforded to the conclusions of the court below. *See Comdata Network, Inc. v. Tennessee Dept. of Revenue,* 852 S.W.2d 223, 224 (Tenn. 1993); *Tennessee Farmers Mut. Ins. Co. v. Witt,* 857 S.W.2d 26, 29 (Tenn.1993); *Nash v. Mulle,* 846 S.W.2d 803, 804 (Tenn.1993).

## III. Analysis

### A. Preliminary Issues

The State has raised threshold issues concerning the efficacy of McKnight's petition, which McKnight has designated as a petition for either post-conviction or habeas corpus relief. In its brief, the State contends that the petition, if viewed as one for post-conviction relief, is time-barred and does not state a proper ground for post-conviction relief. The State also contends McKnight's claim does not satisfy the prerequisites for habeas corpus relief. We must address these issues at the outset.

### 1. Timeliness of McKnight's Petition

■ First, the State argues that if McKnight's motion is viewed as a petition for post-conviction relief, it is time-barred. The procedures for seeking post-conviction relief are set forth in the Post Conviction Procedure Act, Tenn.Code Ann. §§ 40–30–201 to –310 (1997). Under the pertinent statute of limitations provision provided in the Act, those persons who do not appeal their sentences must petition for post-con-

---

**2.** 905 S.W.2d 554, 557 (Tenn.1995) (holding that when a person presents himself or herself for incarceration but is turned away, the sentence begins to run when the judgment of conviction becomes final or the prisoner is actually incarcerated, whichever is earlier).

**3.** Tenn.Code Ann. § 55–10–403(p)(3) provides:

Nothing in this subsection shall be construed to give an offender a right to serve a sentence for a violation of § 55–10–401 … within a specified period of time. Failure of a sheriff or chief administrative officer of a jail to require an offender to serve such a sentence within a certain period of time … shall have no effect upon the validity of the sentence.

viction relief within one year of the date on which the judgment became final or consideration of the petition will be time-barred. Tenn.Code Ann. § 40–30–202(a). In this case, the trial court's judgment of conviction was entered on May 15, 1997; consequently, it became final 30 days later on June 15, 1997. *See State v. Pendergrass,* 937 S.W.2d 834, 837 (Tenn.1996) (citing Tenn. R.App. P. 4(a) and (c); *State v. Moore,* 814 S.W.2d 381, 382 (Tenn.Crim. App.1991)) ("As a general rule, a trial court's judgment becomes final thirty days after its entry unless a timely notice of appeal or a specified post-trial motion is filed."). McKnight filed his petition on September 3, 1998. Thus, if the limitations period applies, his petition is time-barred.

Application of the limitations period in this case, however, raises due process concerns because McKnight did not receive the notice to start serving his sentence until August 1998, two months after the limitations period had expired. The effect of the right to due process upon the statute of limitations for filing post-conviction actions was addressed recently in *Seals v. State,* 23 S.W.3d 272 (Tenn.2000). In *Seals,* the Court considered the balance between the defendant's interest in attacking a conviction or sentence on constitutional grounds and the State's interest in avoiding the litigation of stale and groundless claims. Although the Court noted that "[a] petitioner's interest in collaterally attacking a conviction is not a fundamental right that deserves heightened due process protection," it nonetheless held:

> [B]efore a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that a potential litigant be provided an opportunity for the "presentation of claims at a meaningful time and in a meaningful manner." The test is "whether the time

period provides an applicant a reasonable opportunity to have the claimed issue heard and determined."

*Id.* at 277–78 (quoting *Burford v. State,* 845 S.W.2d 204, 207 (Tenn.1992)). Likewise, in *Sands v. State,* this Court clarified the consideration that must be given to "later-arising" claims, defined as those claims which arise after the limitations period has already begun to run. 903 S.W.2d 297, 301 (Tenn.1995). We established the following framework for consideration of such claims:

> (1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

*Id.* Applying the principles of *Seals* and *Sands* to the case under submission, we conclude that strict application of the limitations period would deprive McKnight of a reasonable opportunity to have his claim heard and determined at a meaningful time and in a meaningful manner. As noted above, McKnight did not receive the order to begin serving his sentence until two months after the expiration of the limitations period for post-conviction relief. Thus, if the statute of limitations were strictly applied, McKnight's opportunity to be heard would be defeated by the very delay which forms the basis of his petition. Under the circumstances, we find that the limitations period provided in Tenn.Code Ann. § 40–30–202(a) must be tolled in this case to provide McKnight a reasonable opportunity to be heard on his post-conviction petition.

### 2. Grounds

Next, the State argues that McKnight's petition does not assert a proper ground for post-conviction relief. The pertinent provision of the Post–Conviction Procedure Act provides that relief under the Act "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn.Code Ann. § 40–30–203 (1999); *see also Van Tran v. State*, 6 S.W.3d 257, 263 (Tenn.1999). Questions which are "independent of the validity of trial and sentencing, [are] not within the contemplation of the Act." *Van Tran*, 6 S.W.3d at 263. In the case under submission, McKnight's first contention, that his sentence has expired, does not involve a claim that the sentence itself was invalid. Instead, McKnight merely asserts that the time for initiating his incarceration has run out. This contention, therefore, does not raise a valid ground for post-conviction relief. McKnight's second contention, on the other hand, is essentially an assertion that his sentence is voidable because the State's delay in initiating his incarceration abridged his constitutional right to due process. Such an issue, therefore, is an appropriate issue for post-conviction review. Thus, although McKnight's argument that his sentence has expired cannot be raised in the context of a petition for post-conviction relief, the due process issue satisfies the requirements of the Act and is subject to post-conviction review.

Although McKnight's assertion that his sentence has expired may not be a proper ground for post-conviction relief, it may be an appropriate issue for habeas corpus review. The State contends that habeas corpus relief is not implicated because McKnight's total sentence has not expired. Although the 210 day period of actual incarceration imposed in McKnight's sentence has passed, McKnight's full sentence involved two suspended terms of 11 months 29 days, a total period of 22 months 58 days. That period of time had not yet run out at the time McKnight's petition was filed. The circumstances under which habeas corpus relief is available were discussed recently in *State v. Ritchie*, 20 S.W.3d 624 (Tenn. 2000). In *Ritchie*, this Court noted:

> Unlike the federal writ of habeas corpus which reaches as far as allowed by the Constitution, the scope of the writ within Tennessee does not permit relief from convictions that are merely voidable for want of due process of law. Rather, the writ of habeas corpus will issue in Tennessee "only when it appears upon the face of the judgment or the record of the proceedings upon which the judgment is rendered that a convicting court was without jurisdiction or authority to sentence a defendant, or that a defendant's sentence of imprisonment or other restraint has expired."

*Id.* at 630 (quoting *Archer v. State*, 851 S.W.2d 157, 158 (Tenn.1993) (internal quotations omitted)). Although McKnight does not assert that the convicting court was without jurisdiction or authority to sentence him, his claim that his "sentence of imprisonment or other restraint has expired" is an appropriate issue for habeas corpus review because the question has been raised properly in his petition and the issue can be determined from the face of the judgment orders. Therefore, the Court will address McKnight's Motion for Post–Conviction Relief and/or Writ of Habeas Corpus as a petition for habeas corpus relief when addressing his first contention, that his sentence has expired, and it will be treated as a petition for post-conviction relief when addressing his second contention, that the delay in initiating his

incarceration violates due process. *Cf. Norton v. Everhart*, 895 S.W.2d 317, 319 (Tenn.1995) (noting that a court may treat a pleading according to the relief sought).

### B. Expiration of the Sentence

The test for determining whether a defendant's sentence has expired was first established by this Court in *State v. Walker*, 905 S.W.2d 554 (Tenn.1995). The defendants in *Walker*, like McKnight, had pleaded guilty to the offense of DUI and had reported to the sheriff's office to begin serving their sentences. *Id.* at 555. Because there was no space available, they were turned away and told they would be notified when to report; however, one defendant was not notified to begin serving his sentence until over a year later, and the other was not notified until nearly two years later. *Id.* Like McKnight, they petitioned for post conviction relief. *Id.* Addressing the defendants' claims on appeal, the *Walker* Court first noted that "there is no uniform constitutional standard that has been applied in cases where a defendant is refused admission to the jail because' of overcrowded conditions." *Id.* at 556. The Court then turned for guidance to a number of statutes outlining the duty of sheriffs to execute judgments of imprisonment as soon as possible and authorizing sheriffs to convey defendants to jails in nearby counties if their own jails were insufficient. *Id.* (discussing Tenn.Code Ann. §§ 40–23–101; –103; and 41–4–121). Reading these statutes in conjunction to

determine the intent of the legislature, the *Walker* Court concluded:

> We are persuaded that our statutes require more than a passive course of non-action that leaves [persons who have been denied their request to begin serving a sentence] living indefinitely under an unexecuted criminal sentence. Therefore, we hold that where persons under a criminal sentence immediately present themselves to the appropriate authorities for incarceration and are turned away the sentence in each case shall begin to run when the judgment of conviction becomes final or the prisoner is actually incarcerated, whichever is earlier.

*Id.* at 557.[4]

■ The holding in *Walker*, however, does not end our analysis in this case. Effective July 1, 1995, the legislature enacted a new statutory provision outlining the penalties for DUI offenders. *See* 1995 Tenn. Pub. Acts 524. This statute, now codified at Tenn.Code Ann. § 55–10–403 (1997), provides in pertinent part:

> (p)(1) An offender sentenced to a period of incarceration for [DUI] shall be required to commence service of such sentence within thirty (30) days of conviction or, if space is not immediately available in the appropriate municipal or county jail or workhouse within such time, as soon as such space is available. If, in the opinion of the sheriff or chief administrative officer of a local jail or workhouse, space will not be available

---

4. In its brief, the State contends that the holding of *Walker* must be read to provide that a sentence does not expire until the entire sentence, including probationary periods and periods of suspended sentence, has run. Though McKnight's 210 day sentence of imprisonment had run by the time he received orders to begin serving his sentence, the entire periods provided by his consecutive 11 month, 29 day suspended sentences had not

yet been exhausted at the time his petition was filed. Thus, the State asserts, this Court should find that McKnight's entire "sentence of imprisonment or other restraint" had not expired. Because, however, of our holding that the rule expressed in *Walker* has been abrogated in DUI cases by the enactment of Tenn.Code Ann. § 55–10–403, we need not decide this issue.

to allow an offender ... to commence service of such sentence within ninety (90) days of conviction, such sheriff or administrative officer shall use alternative facilities for the incarceration of such offender....

...

(3) Nothing in this subsection shall be construed to give an offender a right to serve a[DUI] sentence ... in an alternative facility or within a specified period of time. *Failure of a sheriff or chief administrative officer of a jail to require an offender to serve such a sentence within a certain period of time ... shall have no effect upon the validity of the sentence.*

Tenn.Code Ann. § 55–10–403(p)(1), (3) (emphasis added). Although this statutory provision did not apply in *Walker* because it was enacted after the defendants' convictions, the *Walker* Court acknowledged the statute's possible impact on its holding, stating, "[This legislation] may affect the rule we announce today. We express no opinion about what effect the statute may have because that issue is not before us." *Walker*, 905 S.W.2d at 557, n. 1.

McKnight asserts that the language of Tenn.Code Ann. § 55–10–403(p)(3) does not conflict with the *Walker* holding because the provision merely denies relief based on the failure to meet the time limits provided in Tenn.Code Ann. § 55–10–403(p)(1). In other words, McKnight asserts that subsection (p)(3) provides that a person convicted of DUI may not escape punishment simply because the sheriff violated subsection (p)(1) by failing to initiate that person's incarceration in the appropriate jail or workhouse within 30 days or, if space in the jail should be unavailable, in an alternative facility within 90 days. We find this assertion to be unpersuasive.

 In construing this statute, our fundamental goal is to ascertain and give

effect to the intent of the legislature without unduly restricting or expanding the intended scope of the statute. *Parks v. Tennessee Mun. League Risk Management Pool,* 974 S.W.2d 677, 679 (Tenn. 1998); *Owens v. State,* 908 S.W.2d 923, 926 (Tenn.1995). When the language of a statute is ambiguous, the Court must look to the statutory scheme as a whole, as well as legislative history, to discern its meaning. *Riggs v. Burson,* 941 S.W.2d 44, 54 (Tenn. 1997).

While the legislature has recognized that space may not immediately be available for the incarceration of those convicted of DUI, it has, however, expressed its intent with the enactment of subsection (p)(3) that those persons shall not escape incarceration because of delay in the service of their sentences. The language of the statute does not in any way limit its scope to the contemplation of the 30 and 90 day time limitations provided in subsection (p)(1). Moreover, Representative Roy Herron, who sponsored the legislation at issue, opened his remarks before the House Judiciary Committee by discussing a "huge backlog" of DUI defendants who were "actually not doing the time," and he explained the purpose of the statute by stating that "if somehow the ball's dropped, that doesn't mean you don't have to serve the time." H. Judiciary Comm., 99th Gen. Assembly (Tenn., April 5, 1995) (statements of Representative Roy Herron, explaining House Bill 735).

Other provisions related to DUI sentencing further reflect the legislature's intent to ensure that DUI offenders do not avoid incarceration. For example, Tenn. Code Ann. § 55–10–403(b) (1997) prevents those convicted of DUI from being granted probation if they have not fully served the minimum sentence in jail and also provides that DUI defendants are not eligible for pretrial diversion. Such restrictions re-

flect an intent to obligate those convicted of DUI to serve their jail sentences without exception. *See Daniels v. City of Alcoa,* 732 F.Supp. 1467 (E.D.Tenn.1989) (holding that the exception of DUI cases from eligibility for pretrial diversion clearly manifests a legislative policy of treating DUI offenses more seriously than other misdemeanors).

In a technical sense, the statement in subsection (p)(3) that "[f]ailure ... to serve such a sentence within a certain period of time ... shall have no effect upon the validity of the sentence" might seem inapposite to a claim that the sentence has expired. A defendant who contends that his or her sentence has expired does not actually dispute the validity of the sentence; he or she merely asserts that the time for serving the otherwise valid sentence has run out. To construe the term "validity" in such a manner, however, would undermine the objectives expressed by the legislature in passing the statute. In light of the intent of the legislature as manifested in the language of subsection (p)(3), the statute's legislative history, and related statutes, we conclude that DUI sentences will no longer expire due to a delay between the imposition of sentence and service of sentence.

## C. Due Process

By holding that DUI sentences no longer expire due to delays in the initiation of the defendant's incarceration, we do not mean to imply that the time within which a person may be made to serve a sentence is capable of being extended indefinitely. Although the holding of *Walker* has been abrogated in DUI cases by the enactment of Tenn.Code Ann. § 55–10–403(p)(3), excessive delays in the execution of a DUI defendant's sentence still may violate the due process protections of the United States Constitution and the Tennessee Constitution. In *Walker,* the Court noted that "[e]ven where the delay [in the execution of a criminal judgment] results from simple negligence or oversight, the courts have recognized that relief from the sentence might be available on due process grounds." 905 S.W.2d at 555. Although the Court observed that defendants seeking relief on due process grounds must meet a "high standard," it nonetheless recognized that a defendant's right to due process would be violated if the State's delay were "so affirmatively wrong or grossly negligent that further incarceration would be inconsistent with fundamental principles of liberty and justice." *Id.* at 556.

 In this case, however, we conclude that the State's delay in ordering McKnight to begin his sentence was not so excessive as to violate his right to due process. McKnight's jail sentence, 210 days, was relatively long for a DUI offender, and the State's delay in ordering him to begin serving his jail sentence was just over a year. Moreover, the record does not reflect that McKnight has been prejudiced in any material way by the delay in the initiation of his sentence. In *Walker,* both defendants received jail sentences of twenty days, and the State's delay in notifying them when to report was over one year for one defendant and nearly two years for the other. *Id.* at 555. Moreover, at least one of the defendants testified that he would be prejudiced by the delay because employees who had begun working for him during the delay would steal from him if he had to go to jail. *Id.* at 558 (Fones, J., dissenting). Despite these circumstances, the *Walker* Court nonetheless concluded that the defendants

in that case had failed to demonstrate that their rights to due process had been violated. *Id.* at 556. We find that the facts of McKnight's case compel a similar conclusion.[5]

### IV. Conclusion

For the foregoing reasons, we conclude that the enactment of Tenn.Code Ann. § 55–10–403(p)(3) has abrogated the holding of *State v. Walker* in DUI cases. Therefore, we hold that McKnight's sentence did not expire despite the State's delay of over a year in ordering him to report to begin serving his sentence. Moreover, because we find that McKnight has failed to demonstrate that the State's delay was so "affirmatively wrong or grossly negligent that further incarceration would be inconsistent with fundamental principles of liberty and justice," we conclude that the State's delay in this case did not violate McKnight's right to due process. Therefore, we affirm the decision of the Court of Criminal Appeals denying McKnight's petition for post-conviction and habeas corpus relief. Costs on this appeal are taxed to Robert M. McKnight, for which execution may issue if necessary.

---

5. Because of our conclusion, it is unnecessary at this time to decide precisely how long of a delay, or what degree of prejudice, would exceed the bounds of due process. At the present time, it suffices to say that, under the facts of this case, McKnight's right to due process has not been violated.